**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


RAYMOND WILLIAMS,

       Plaintiff,

v.                                    CASE NO.  5:16cv196-RH/GRJ

SIGNATURE HEALTHCARE,

       Defendant.

_____/


## <u>ORDER GRANTING SUMMARY JUDGMENT</u>


This is an employment-discrimination case. The plaintiff alleges he was terminated from his job at the defendant's nursing home because of his race. But the record establishes that the plaintiff was terminated for a legitimate, nondiscriminatory reason: his no-contest plea to the crime of battery. This order grants summary judgment for the defendant.

I

On a summary-judgment motion, disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of the

nonmoving party. The moving party must show that, when the facts are so viewed,

the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary-judgment

motion cannot be used to resolve in the moving party's favor a "genuine dispute as

to any material fact." Fed. R. Civ. P. 56(a). This order views the facts based on

these standards.

## II

The plaintiff Raymond Williams alleged in his complaint that he is black but

testified at deposition that he is biracial. He performed maintenance and repair

work at the Courtyard, one of many nursing homes operated by the defendant

Signature Healthcare. Mr. Williams had regular contact with the Courtyard's

residents, who are elderly or disabled.

On March 31, 2015, a Jackson County sheriff's deputy arrived at the

Courtyard with a warrant to arrest Mr. Williams for felony battery. The charge was

that Mr. Williams shot a man in the face. Mr. Williams was not at work, so the

deputy asked the facility to notify the sheriff's office when Mr. Williams returned.

The next day, a deputy arrested Mr. Williams at work.

Mr. Williams spent the next two weeks in jail. When he was released, he

informed the Courtyard's administrator, Brad Nobles, of the charge. Mr. Nobles

told Mr. Williams that he could return to work if the charge was reduced to a misdemeanor. Mr. Nobles confirmed the advice by text message.

Meanwhile, the Courtyard's human-resources director, J. Clint Baxley, emailed Signature's corporate human-resources department to determine whether an employee facing a felony charge could continue working. Mr. Baxley's e-mail did not include Mr. Williams's name or race. Gina Harding, a human-resources advisor, responded to the email by recommending that Mr. Baxley not allow the employee to work until Signature had proof of the charges. Ms. Harding suggested that Mr. Baxley place the employee "on a discretionary, unpaid [leave of absence] until we can obtain more information. . . . If the process exceeds 60 days I would terminate him until a decision can be made." ECF No. 20-3 at 30.

Mr. Williams later agreed to plead no contest to a reduced charge of misdemeanor battery. His attorney provided the plea agreement to Signature after Mr. Williams and the prosecutor both signed it but before the judge approved it.

Mr. Baxley emailed the corporate human-resources department to report on the plea papers and to ask for guidance on whether the employee could return to work. Christy Wathen, a senior human-resources advisor, responded that a battery charge of any kind was disqualifying. She recommended termination. Ms. Wathen did not know Mr. Williams's name or race. Based on Ms. Wathen's

recommendation, Mr. Baxley terminated Mr. Williams. The email asking for advice, the response, and the termination all occurred on a single day, June 3, 2015. Signature later hired a white man to replace Mr. Williams.

On June 16, 2015, about two weeks after the termination, Mr. Williams formally entered a no-contest plea to the misdemeanor battery charge.

III

When, as here, an employee relies on circumstantial evidence in support of a discrimination claim, the employee may proceed under the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later cases. Under that framework, an employee first must present a prima facie case. The employer then must proffer a legitimate, nondiscriminatory reason for its decision. The employee then must show that the proffered reason was not the real reason for the decision and that instead a reason was discrimination. Alternatively, the employee may present other evidence from which a reasonable factfinder could infer prohibited discrimination. *See*, *e.g.*, *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

IV

The elements of a prima facie case arising from a termination are that the plaintiff was qualified for the job and either that the plaintiff was replaced with a

person outside of the plaintiff's protected class or that a person outside the class was not terminated in comparable circumstances. *See*, *e.g.*, *Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

Mr. Williams has presented a prima facie case. Mr. Williams is a member of a protected class, he was qualified for his job, and he was replaced by a white person.

V

Signature has proffered a legitimate, nondiscriminatory reason for terminating Mr. Williams: his agreement to enter a no-contest plea to battery. The record is absolutely clear that that was the reason for the termination. Had Mr. Williams not been charged with battery, he would not have been terminated. Rarely has an employment-discrimination case presented so clear a record of just what happened and why.

Mr. Williams asserts, though, that Signature used the battery plea as a pretext for racial discrimination. The record is to the contrary. On this issue, five points merit discussion.

First, the corporate senior human-resources advisor whose recommendation was given controlling weight did not know Mr. Williams's identity or race. Her recommendation could not have been motivated by race.

Second, Signature's concern about a battery offense was fully consistent with its general practice. Signature conducts criminal-background checks on all new hires and periodically conducts criminal-background checks on all existing employees. *See* ECF No. 20-3 at 15. Indeed, Signature is legally required to do so. *See, e.g.*, Fla. Stat. §§ 400.215(1) & 408.809(1)(e) (requiring background checks for any employee or applicant "who is expected to . . . provide personal care or services directly to clients or have access to client funds, personal property, or living areas"). Signature also requires employees to report arrests that occur during their employment. Signature's background-check policy specifically lists battery as an offense that may disqualify a person from being initially hired or from continuing as a Signature employee. Signature consistently followed these policies, for Mr. Williams and all others.

Third, Mr. Williams has proffered no evidence of racial animus by any Signature employee. He says that a month or two after the termination, Mr. Baxley said he fired Mr. Williams "for acting like a thug." ECF No. 23-17 at 2. This comment has racial overtones only if one makes the racially biased assumption that

being a thug correlates with race. An unbiased person might well conclude that shooting a man in the face is acting like a thug, regardless of the race of the shooter. To be sure, Mr. Williams denies shooting a man in the face, but he entered a no-contest plea after being charged with doing so.

Fourth, the facility's administrator, Mr. Nobles, initially told Mr. Williams he could keep his job if the charge was reduced to a misdemeanor. It turned out that was incorrect. When Mr. Baxley contacted the corporate human-resources department, the response was that a plea to a battery charge—felony or misdemeanor—should result in termination. An employer can correct erroneous advice of this kind so long as race is not a motivating factor in the termination decision.

Fifth, Mr. Williams says another employee, Thomas Brown, entered a plea to a battery charge and was not fired. Mr. Brown is African-American, the same race claimed by Mr. Williams in his complaint, so any difference in treatment between Mr. Williams and Mr. Brown does not suggest that race was a motivating factor in Mr. Williams's treatment. Moreover, when Mr. Brown was charged, Signature promptly put him on unpaid administrative leave and gave him 60 days to resolve the issue. Mr. Brown, a certified nursing assistant, applied for and received from the Florida Board of Nursing an "Exemption from Disqualification."

ECF No. 20-4 at 2; *see also id*. at 10. Only then did Signature allow Mr. Brown to

return to work. Mr. Williams received no such clearance.

In sum, the record establishes that Signature terminated Mr. Williams

because of his plea to a battery offense. This was not a pretext for discrimination.

Mr. Williams might or might not have actually committed the battery, and

Signature might or might not have acted wisely in terminating Mr. Williams based

merely on a no-contest plea. But as the Eleventh Circuit has repeatedly said, a

federal judge and jury do not sit as a super-personnel department. *See, e.g.*,

*Chapman v. A1 Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000); *Elrod v. Sears,*

*Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Instead, an "employer may

fire an employee for a good reason, a bad reason, a reason based on erroneous

facts, or for no reason at all, as long as its action is not for a discriminatory

reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir.

1984) (Wisdom, J.).

VI

For these reasons,

IT IS ORDERED:

1. Signature's summary-judgment motion, ECF No. 21, is granted.

2. The clerk must enter judgment stating, "This action was resolved on a summary-judgment motion. It is ordered that the plaintiff Raymond Williams recover nothing on his claims against the defendant Signature Healthcare. The claims are dismissed on the merits."

3. The clerk must close the file.

SO ORDERED on May 24, 2017.

s/Robert L. Hinkle
United States District Judge